# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ALICIA WILSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-3673 |
| | § | |
| EZ EXIT NOW, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendant EZ Exit Now, LLC's ("EZ Exit") amended motion for summary judgment. Dkt. 29. Plaintiff Alicia Wilson ("Wilson") has responded (Dkt. 31) and EZ Exit has replied (Dkt. 32). This motion is ripe for consideration. Having considered the motion, response, reply, evidentiary record, and applicable law, the court finds that EZ Exit's motion for summary judgment (Dkt. 29) should be **DENIED**.

## I. BACKGROUND

This is an employment discrimination case in which Wilson claims that EZ Exit "failed to hire her, rescinded her offer of employment, or terminated her because she is a Black female." Dkt. 1 ¶ 1. The following are the only facts that the parties do not dispute:

- EZ Exit—through its employee, Erutejiro Oratokhai ("Oratokhai"), a manager at the company—hired Wilson as a call center supervisor on April 4, 2016. Dkt. 29 at 2, 14; Dkt. 31 ¶ 6; Dkt. 32 at 2.

- Wilson's first day of work was to be April 12, 2016. Dkt. 29 at 2; Dkt. 31 ¶ 6. However, Wilson called EZ Exit on April 12, 2016 to say that she would miss work because she was sick. Dkt. 29 at 2; Dkt. 31 ¶ 6; Dkt. 32 at 2. That same day, one of EZ Exit's owners, Dan Cobb ("Cobb"), called Wilson and terminated her employment. Dkt. 29 at 2, 14; Dkt. 31 ¶ 6.

- On April 13, 2016, Oratokhai contacted Wilson to reinstate her employment, explaining that Cobb's phone call the day prior was a misunderstanding.

>    Dkt. 29 at 2, 14; Dkt. 31 ¶ 6.

- •   Following her reinstatement, Wilson reported for her first day of work on April 14, 2016.[1] Dkt. 31 ¶ 6; Dkt. 32 at 2.

The remaining facts are the subject of much disagreement.

**A.    Wilson's Version of Events**

According to Wilson's sworn answers[2] to EZ Exit's first set of interrogatories:

> On April 14, 2016, Plaintiff arrived at the main office around 8:40 am[] and sat at the receptionist's area. She spoke with Tina Beres and Ms. Beres escorted her to the interview room (near Ms. Beres and Mr. Dan Cobb's office). . . . Minutes later, Erutejiro Oratokhai came in to meet with Plaintiff and informed her that Dan Cobb did not want to hire her for the supervisor position because she is a Black Female. Erutejiro Oratokhai made reference to issues with previous hires saying that "he" referring to Mr. Dan Cobb does not like to hire us (while pointing to her hand). Erutejiro Oratokhai apologized several times and told Plaintiff to go to the call center and she would attempt to work thinks [sic] out with Mr. Cobb. . . . After about 15 to 20 minutes and after another interviewee left the supervisor's office, a male by the name of Kerry Kalich [sic] came to greet Ms. Wilson and escorted her to his office.

Dkt. 31-2 at 7. During her deposition, Wilson testified that before meeting with Kalish, Oratokhai instructed Wilson: "Don't tell anyone . . . what is going on. Don't let him know why you're there because he's not aware that he's being replaced." Dkt. 29-6 at 21:11–13. Wilson's answer continues:

---

[1] The EEOC record consistently shows that all parties understood that Wilson's first day of work following her reinstatement was to be April 14, 2016. Dkt. 31-1 at 5, 16, 18, 58, 94, 98. Indeed, EZ Exit's reply brief indicates that April 14, 2016 was Wilson's first day of work following her reinstatement. *See* Dkt. 32 at 2 (acknowledging that Wilson called in sick her first day of work—which was April 12, 2016—and appeared "two days later"). Nevertheless, EZ Exit's motion for summary judgment states that Wilson "was contacted to and agreed to begin work on Wednesday April 13, 2016," and that Wilson "did appear on April 13, 2016" (Dkt. 29 at 2), while the next page of the motion inexplicably provides April 15, 2016 as Wilson's first day of employment (*id.* at 3), and April 15, 2019—three years later—as the day that Wilson "left the building" (*id.*). Given the obvious inconsistencies throughout EZ Exit's own motion, the court will disregard the dates represented therein in favor of dates that are otherwise undisputed throughout the record.

[2] "Verified or sworn pleadings are competent summary judgment evidence . . . ." *Tesco Corp. v. Weatherford Int'l, Inc.*, 904 F. Supp. 2d 622, 636 (S.D. Tex. 2012) (Ellison, J.).

> Mr. Kerry Kalich [sic] interviewed her just as Erutejiro Oratokhai had done. He made comments that she had a great amount of experience and stated "wow, you could be a supervisor someday." . . . He told her that he would recommend her for the customer service agent position. Plaintiff was not asked to stay and therefore, she left the office.[3] Erutejiro Oratokhai called Plaintiff and told her that Mr. Cobb was not willing to pay $38,000 annually and stated that she was upset that Mr. Cobb would do this because Ms. Wilson is a black female. Ms. Erutejiro Oratokhai then asked Plaintiff if she could get her old job back and offered a job recommendation.

Dkt. 31-2 at 7.

Based on these facts, Wilson claims that her "employment was rescinded because of her race and gender." Dkt. 31 ¶ 11. Wilson filed a complaint with the EEOC on April 26, 2016, and on August 8, 2018, the EEOC "found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent" and issued a right to sue letter. Dkt. 31-1 at 3. Wilson instituted the instant action on October 8, 2018. Dkt. 1.

## B.  EZ Exit's Version of Events

EZ Exit claims that Wilson was never terminated following her April 13, 2016 reinstatement, nor was her offer rescinded. According to EZ Exit:

> WILSON did appear on April 13, 2016,[4] and was told to go to the call center for training, after receiving her new hire employment package. WILSON did not want to go through the required training and refused to do so. She told the other employees that she was only interviewing, even though she had accepted the employment on April 4, 2016 and on April 12, 2016.[5] She did fill out the new hire employment paperwork, as she did admit and was offered a position. . . . WILSON voluntarily let [sic] the job after being on premises for a short period of time. She never came back

---

[3] According to Wilson's deposition, after the interview, Kalish showed Wilson to the door saying "we will be in touch." *Id.* at 22:15–19.

[4] Notwithstanding this apparent typo, everything in the record indicates that Wilson started work on April 14, 2016, not April 13, 2016. *See supra* n.1.

[5] Notwithstanding this apparent typo, everything in the record indicates that Wilson's employment was reinstated on April 13, 2016, not April 12, 2016. *See supra* n.1.

to or contacted the owners of EZ EXIT, nor did she contact Kerry Kalish who interviewed her.⁶ . . . WILSON admitted that her employment was not terminated by EZ Exit Now after April 15, 2016 her first day of employment. . . . She further admits that she still believed [herself] to be employed when she left the building on April 15, 2019 [sic].⁷

Dkt. 29 at 2–3 (citations omitted).

## II. LEGAL STANDARD

**A.   Summary Judgment**

Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it could affect the outcome of the lawsuit, and a dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986))."In determining whether there is a dispute regarding a material fact, we consider all the evidence in the record but do not make credibility determinations or weigh the evidence." *Man Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 478 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. 242 at 255, 106 S. Ct. at 2513 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S. Ct. 1598, 1608–09, 26 L. Ed. 2d 142 (1970)).

---

⁶ EZ Exit offers no explanation for why Kerry Kalish interviewed Wilson if she had in fact already been hired, as EZ Exit claims in the preceding sentences.

⁷ *See supra* n.1.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

**B.      Title VII Race and Gender, and Section 1981 Race Discrimination**

"'To succeed on a claim of intentional discrimination under Title VII . . . or Section 1981, a plaintiff must first prove a prima facie case of discrimination.'"[8] *Brandon v. Sage Corp.*, 61 F. Supp. 3d 632, 643 (W.D. Tex. 2014), *aff'd*, 808 F.3d 266 (5th Cir. 2015) (quoting *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047–48 (5th Cir. 1996)). "'Generally, a plaintiff proves a prima facie case through a four-element test that allows an inference of discrimination, but a prima facie case can also be proven by direct evidence of discriminatory motive.'" *Id.* (internal alterations omitted). "Remarks can constitute direct evidence of discrimination when they state on their face that an improper criterion served as a basis for the adverse employment action, *id.* at 993, or if they meet the four-part test set forth in *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996)." *Id.* (citing *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 993 (5th Cir. 2005)). Under the four-part test, workplace comments are direct evidence of discrimination where they are: "(1) related to the

---

[8] Where plaintiff "bases her claims on Title VII and Section 1981, we refer only to Title VII, because '[w]hen used as parallel causes of action, Title VII and [S]ection 1981 require the same proof to establish liability,' and 'it would be redundant to refer to [both] of them.'" *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 n.3 (5th Cir. 2016) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999)).

5

protected class of persons of which the plaintiff is a member; (2) proximate in time to the employment decision at issue; (3) made by an individual with authority over the employment decision at issue; and (4) related to the employment decision at issue." *Bourgeois v. United States Coast Guard*, 151 F. Supp. 3d 726, 734–35 (W.D. La. 2015) (citing *Auguster v. Vermilion Parish School Bd.*, 249 F.3d 400, 405 (5th Cir. 2001)).

### III. ANALYSIS

EZ Exit moves for summary judgment arguing that: (1) Wilson fails to state a claim; (2) Wilson "was not terminated nor was an offer of employment rescinded"; (3) EZ Exit acted in good faith; (4) "Plaintiff's claims are barred because Plaintiff failed to show for work her first day of work when she was terminated"; (5) "Defendant never met Plaintiff at any time and did not know of her race and/or ethnicity"; and (6) "Plaintiff voluntarily left the employment of Defendant, walking out [without] any notice, and did not return or communicate with Defendant after she left." *Compare* Dkt. 29 at 5–10 (offering six arguments for summary judgment, including EZ Exit's first, fifth, seventh, eighteenth, and nineteenth affirmative defenses), *with* Dkt. 5 at 6–7 (EZ Exit's affirmative defenses as stated in its answer).[9] EZ Exit also argues that all of Wilson's purported evidence is inadmissible hearsay. Dkt. 29 at 7, 11–14; Dkt. 32.

The court will address EZ Exit's arguments in turn. However, EZ Exit also refers frequently to the number of minorities it employs and the fact that Oratokhai is herself a black female. The court is unsure whether EZ Exit intends these arguments to function as some type of affirmative defense. To the extent that EZ Exit is arguing that it cannot have discriminated against Wilson

---

[9] Because EZ Exit's motion for summary judgment is poorly formatted and rife with spelling and grammatical errors, the court has relied on the similarities between the headings in EZ Exit's motion (Dkt. 29) and the headings in EZ Exit's answer (Dkt. 5) in an attempt to distill the substance of EZ Exit's arguments.

6

because "everybody that Plaintiff dealt with at EZ Exit was a minority" (Dkt. 29 at 11), the court will explain why this is a legally insufficient defense.

A. **The Court Has Already Found that Wilson States a Claim**

EZ Exit argues that Wilson's "Complaint fails to state a claim upon which relief may be granted." Dkt. 29 at 5. This court has already ruled that Wilson's complaint states a claim. *See* Dkt. 24 (adopting the Memorandum and Recommendation of Magistrate Judge Johnson denying EZ Exit's motion to dismiss for failure to state a claim). The court will not revisit its decision.

B. **Whether Wilson Suffered an Adverse Employment Action Is Genuinely Disputed**

The court finds little distinction between the second, fourth, and sixth arguments for summary judgment, which essentially state that Wilson was not terminated because she abandoned her position. Dkt. 29 at 6, 8, 10. Accordingly, the court considers these arguments as an assertion that Wilson suffered no adverse employment action. EZ Exit claims that Wilson's own admissions and deposition testimony show "that her employment was not terminated by EZ Exit Now." Dkt. 29 at 3. In support of this assertion, EZ Exit cites to Wilson's admission that her "employment was not terminated by Ez Exit Now after April 14, 2016." Dkt. 29-1 at 14 (Request for Admission 54). However, Wilson responds that this admission "is true because Plaintiff was constructively terminated . . . *on* April 14, 2016." Dkt. 31 at 3 (emphasis in original). The court must draw all justifiable inferences in favor of Wilson, the non-movant. *Anderson*, 477 U.S. 242 at 255. Because a jury could reasonably find that Wilson's admission comports with her version of events—i.e., that she was constructively discharged *on*, not *after*, April 14, 2016—there remains a genuine dispute about whether Wilson suffered an adverse employment action.

In further support of its argument that Wilson was not terminated, EZ Exit cites to Wilson's deposition, in which Wilson testified that "when Mr. Kalish walked [her] out," Wilson still believed

7

that she had been hired by EZ Exit. Dkt. 32 at 8 (citing Dkt. 29-6 at 36:20–37:1). However, Wilson's testimony does not end there. The next question posed to Wilson was: "So why didn't you try to come back the next day or come back another day?" Dkt. 29-6 at 37:2–3. Wilson replied: "I spoke to Ruth [Oratokhai] on the doorstep of the company, and that's when she told me he refused to hire me." *Id.* at 37:4–5. At trial, EZ Exit is free to argue to the jury that Wilson abandoned her job. However, Wilson is free to argue that "[u]nder Texas Common Law theory of Respondeat Superior,[10] the Defendant through their agent Rute [Oratokhai] terminated the Plaintiff." Dkt. 31 at 8.

EZ Exit cites this same deposition testimony in its reply, arguing that "Plaintiff admitted to never contacting or calling Dan Cobb or Kristin Cobb after she left that day to follow up on her employment." Dkt. 32 at 8 (citing Dkt. 29-6 at 36–37[11]). However, EZ Exit fails to mention that Wilson testified that she "didn't have an option to" contact the Cobbs because she "had no contact info" other than an 800 number and Oratokhai's cell phone. Dkt. 29-6 at 28:2–12. At trial, EZ Exit is free to argue that Wilson's failure to contact Dan Cobb or Kristin Cobb is evidence that she

---

[10] The court does not look to Texas common law for purposes of determining which employees, if any, can subject an employer to vicarious liability under Title VII or Section 1981. *See infra* section III.D. (discussing the Supreme Court's criteria—set forth in *Vance v. Ball State Univ.*, 570 U.S. 421, 133 S. Ct. 2434, 186 L. Ed. 2d 565 (2013)—for "supervisors" for purposes of vicarious liability under Title VII). *See also Delouise v. Iberville Par. Sch. Bd.*, 8 F. Supp. 3d 789, 804 (M.D. La. 2014) (applying the same criteria to Section 1981 claims). However, Wilson's failure to identify the correct standard is irrelevant here, where EZ Exit fails to contest Oratokhai's role in hiring Wilson and, even if that role were contested, Wilson has shown a genuine dispute about whether Oratokhai was the EZ Exit employee responsible for hiring her. *See infra* n.13.

[11] Neither page 36 nor page 37 of the transcript mentions Dan Cobb or Kristin Cobb. As the party moving for summary judgment, it is EZ Exit's burden to "identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. EZ Exit fails to carry its burden where it cites to incorrect portions of the record. Nevertheless, the court has reviewed the transcript and found that Wilson admitted to never calling Dan Cobb or Kristin Cobb. Dkt. 29-6 at 27:25–28:12.

8

abandoned her position. But at the summary judgment stage—construing the facts in Wilson's favor, as the court must—EZ Exit's cherry-picked deposition testimony is insufficient to show the absence of a genuine factual dispute because Wilson has alleged facts upon which a reasonable jury could find that Wilson believed she had been terminated, or that her job offer was rescinded.

## C. Whether EZ Exit Acted in Good Faith Is Genuinely Disputed

Without citing to any law that would give rise to such a defense, EZ Exit argues that "Defendants[12] acted in good faith and had reasonable grounds for believing their actions were in compliance with [] all federal and state discrimination laws in regard to their employees." Dkt. 29 at 7. However, in support of this argument, EZ Exit merely advances the same arguments found throughout the rest of its motion: that Wilson "did start work then just left and never came back." Dkt. 29 at 8. This factual dispute is no different from the arguments in section III.B., and should be left to the jury to resolve.

## D. Whether EZ Exit Knew of Wilson's Race Is Genuinely Disputed

EZ Exit's eighteenth affirmative defense is that "Defendant never met Plaintiff at any time and did not know of her race and/or ethnicity." Dkt. 29 at 9. The defendant is EZ Exit. EZ Exit may act through its owners, but it may also act through its employees. *See Vance v. Ball State Univ.*, 570 U.S. 421, 450, 133 S. Ct. 2434, 2454, 186 L. Ed. 2d 565 (2013) (holding that employees that are empowered to take tangible employment actions against the victim can subject an employer to vicarious liability under Title VII). It is undisputed that Oratokhai—the manager who hired and then reinstated Wilson—is an employee of EZ Exit. Accordingly, EZ Exit—acting through its employee, Oratokhai—has "met" Wilson. Dkt. 29 at 2, 14; Dkt. 29-1 (Ex. A); Dkt. 29-2 (Ex. B); Dkt. 31 ¶ 6; Dkt. 32 at 2. EZ Exit concedes that "other employees" and Kalish met Wilson as well. Dkt. 29 at

---

[12] There is only one defendant in this action: EZ Exit.

9

3–4. The court will not assume that Wilson's race was readily apparent to Oratokhai, Kalish, or the "other employees" to whom Wilson spoke. However, to the extent that EZ Exit's argument is based on the assertion that none of its employees ever "met" Wilson, that fact is genuinely disputed since at least Oratokhai and Kalish met Wilson.

E.  **Wilson's Claims Are Based on Opposing Party Statements, Not Hearsay**

EZ Exit argues that summary judgment is warranted because Wilson's claims "are based upon hearsay and not admissible." Dkt. 29 at 14. The hearsay in question is the "Declaration made by Erutejiro Oratokhai, which differs from her initial statement and the sworn interview statement by the EEOC." Dkt. 32 at 3. EZ Exit argues that this declaration is hearsay because it is "unsupported" and "actually refuted by Erutejiro Oratokhai." Dkt. 29 at 12.

As an initial matter, the court notes that hearsay is a statement made outside of the "current trial or hearing" that is offered "to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Inconsistency does not make a statement hearsay, although it does open the declarant's credibility to attack. *See* Fed. R. Evid. 806. To the contrary, inconsistency can transform a statement that would otherwise *be* hearsay into one that is *not* hearsay. *See* Fed. R. Evid. 801(d)(1)(A) (the statement must have been given under penalty of perjury). Therefore, EZ Exit's argument—that Oratokhai's declaration is hearsay because it is contradicted by her prior statements—is without merit.

Even if the statements in Oratokhai's declaration are hearsay, the "[n]ew Rule 56(c), added in 2010, permits a party to support or dispute summary judgment through unsworn declarations, provided their contents can be presented in admissible form at trial." *Patel v. Texas Tech Univ.*, 941 F.3d 743, 746 (5th Cir. 2019). Under the new rule "'materials cited to support or dispute a fact need only be capable of being presented in a form that would be admissible in evidence.'" *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (quoting *LSR Consulting, L.L.C. v. Wells Fargo*

*Bank, NA*, 835 F.3d 530, 534 (5th Cir. 2016)) (internal quotation marks omitted). However, the court need not decide whether the statements in Oratokhai's declaration are hearsay that could be presented in admissible form, because Wilson's claims survive summary judgment based solely on Wilson's own testimony about what Oratokhai said to her throughout the hiring process. This is because any statements that Wilson testifies Oratokhai made to her during the hiring process are not hearsay, they are statements offered against an opposing party. Fed. R. Evid. 801(d)(2).

Contrary to EZ Exit's assertion, Wilson does not have the burden to prove that "there was discriminatory action on [the part of EZ Exit's owners Dan and Kristin Cobb] in regard to WILSON's employment." Dkt. 29 at 12. Dan and Kristin Cobb are not defendants in this action. The defendant is EZ Exit. EZ Exit may act through its owners, but it may also act through its employees. *Vance*, 570 U.S. at 450, 133 S. Ct. at 2454. Accordingly, Wilson has the burden to prove discrimination by EZ Exit, whether that discrimination be through its owner(s) or its employee(s).

When a "party's agent or employee" speaks "on a matter within the scope of that relationship and while it existed," that statement is not hearsay. Fed. R. Evid. 801(d)(2)(D). EZ Exit does not contest that Oratokhai was its employee, or that Oratokhai was responsible for initially hiring and then rehiring Wilson. *See supra* at 1–2 (recounting undisputed facts).[13] Therefore, Wilson's sworn answer that Oratokhai told Wilson that "Dan Cobb did not want to hire her for the supervisor position because she is a Black Female" (Dkt. 31-2 at 7), and that "Mr. Cobb was not willing to pay

---

[13] Wilson's response nevertheless treats this as a contested fact, noting that "Dan Cobb stated in his Affidavit that no manager is hired or fired without his and his wife's approval." Dkt. 31 at 5 (citing Dkt. 29-1, Ex. A). Wilson preemptively counters by citing to Dan Cobb's EEOC interview. *Id.* (citing Dkt. 31-1 at 107). In that interview, Cobb stated that "Erutejiro [Oratokhai] is the point of contact for hiring employees," and that "he is no[t] involved in the hiring process." Dkt. 31-1 at 107. Accordingly, to the extent EZ Exit would argue that Oratokhai's statements cannot be those of a party opponent, Wilson has pointed to specific portions of the record that create a genuine dispute about whether Oratokhai spoke on behalf of EZ Exit when hiring Wilson.

$38,000 annually . . . because Ms. Wilson is a black female" (*id.*) are admissible as the statements of an opposing party, EZ Exit, because Oratokhai was the EZ Exit employee responsible for hiring Wilson. Fed. R. Evid. 801(d)(2).

Whether Dan Cobb actually "looks at the skin tone" when making hiring decisions is irrelevant to whether Wilson can prove a prima facie case of discrimination, because the EZ Exit representative responsible for hiring Wilson stated "that an improper criterion served as a basis for the adverse employment action." *Brandon*, 61 F. Supp. 3d at 643 (citing *Jones*, 427 F.3d at 993). To state it differently, even if EZ Exit could prove that Oratokhai was lying to Wilson about Dan Cobb, it still would not defeat summary judgment. Wilson has pointed to facts in the record showing a genuine dispute about whether Oratokhai: (1) was responsible for making the hiring decisions at EZ Exit, (2) caused Wilson to think that her employment was terminated or that her job offer was rescinded, and (3) told Wilson that race was a criteria in terminating her or rescinding her offer. Oratokhai's statements to Wilson are direct evidence of discrimination, meaning that Wilson has established a prima facie case. *Id.*

Ordinarily, under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the employer would articulate a legitimate, non-discriminatory reason for the adverse employment action. However, in this case, EZ Exit contends that no adverse employment action occurred because Wilson abandoned her job. *See supra* § III.B. EZ Exit can hardly be said to have a legitimate, non-discriminatory reason for an action it claims to have never taken. Accordingly, the court's analysis begins and ends with its finding that Wilson has established a prima facie case of discrimination through direct evidence.

F.     **EZ Exit's Employment of Other Minorities Is Not a Defense**

In its motion for summary judgment, EZ Exit points out that "Erutejiro Oratokhai is

12

Nigerian," that "Kerry Kalish is a minority with dark skin," that "other employees were also minorities," that Wilson "was the same skin color as Erutejiro Oratokhai," that "everybody that Plaintiff dealt with at EZ Exit was a minority," that "[t]here are currently two African American male managers and one female manager," that "[t]here are also two Hispanic managers," and that "Oratokhai was a black female male [sic] manager who hired Plaintiff." Dkt. 29 at 5, 9, 11, 14. EZ Exit does not expound upon the relevance of these facts. To the extent that EZ Exit intends these facts to function as some kind of affirmative defense, the court will explain why such a defense fails.

"'Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78, 118 S. Ct. 998, 1001, 140 L. Ed. 2d 201 (1998) (quoting *Castaneda v. Partida*, 430 U.S. 482, 499, 97 S. Ct. 1272, 1282, 51 L. Ed. 2d 498 (1977)). For this reason, the Supreme Court has "rejected any conclusive presumption that an employer will not discriminate against members of his own race." *Id.* at 78, 118 S. Ct. at 1001. Similarly, "nothing in Title VII necessarily bars a claim of discrimination 'because of ... sex' merely because the plaintiff and the defendant (or the person charged with acting on behalf of the defendant) are of the same sex." *Id.* at 79, 118 S. Ct. at 1001–02. Rather than functioning as a defense, EZ Exit's amalgamation of all its minority supervisory employees into a single group evinces a fundamental misunderstanding of discrimination law. "The fact that [Wilson] belongs to the same protected class as [Oratokhai] does not necessarily mean that [Oratokhai] did not discharge plaintiff for discriminatory reasons." *Turner v. Hershey Co.*, No. CIV.A. H-12-3365, 2014 WL 4983490, at *7 (S.D. Tex. Oct. 3, 2014) (Lake, J.).

## IV. Conclusion

For the reasons stated above, EZ Exit's motion for summary judgment (Dkt. 29) is **DENIED**.

Signed at Houston, Texas on February 19, 2020.

_____
Gray H. Miller
Senior United States District Judge